IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LY VAN BO, | ) | |
| | ) | Civil Action No. 3:26-28 |
| Petitioner, | ) | |
| | ) | District Judge Stephanie L. Haines |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| PAMELA BONDI, *U.S. Attorney General*, et *al.*, | ) | Re: ECF No. 1 |
| | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

Petitioner Ly Van Bo[1] ("Petitioner") is an immigration detainee who, at the initiation of this matter, was held at the Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania.[2]

Petitioner submitted a Petition for Writ of Habeas Corpus (the "Petition") on January 8, 2026. ECF No. 1. For the reasons that follow, the Petition will be granted, and Respondents will be ordered to release Petitioner from custody forthwith, subject to appropriate conditions consistent with 8 U.S.C. § 1231(a)(3).

---

[1] The Petition was filed, by counsel, naming "Mr. LY VAN BO" as the Petitioner. ECF No. 1 at 1. However, as reflected in the briefing of the Parties, it appears the Petitioner's actual name is Bo Van Ly. ECF No. 14 at 2; ECF No. 16 at 2; ECF No. 16-1 at 10 and 13. The transposition of Petitioner's name provides no basis to deny or delay federal habeas relief.

[2] Since this case began, Petitioner has been transferred to the United States Penitentiary ("USP") Lewisburg, in Union County, Pennsylvania. ECF No. 11 at 1; ECF No. 14 at 1 n.1. This transfer occurred without prior notice to this Court, and without its approval. Be that as it may, it was effected well after the filing of this case, and does not divest this Court of jurisdiction. See Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 448 (3d Cir. 2021). See also ECF No. 17 at 1 (conceding that jurisdiction is proper in this Court).

## I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the Petition, Petitioner challenges his lengthy immigration detention. Petitioner initially argued that he was improperly being detained under 8 U.S.C. § 1225(b)(2), and was entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a). ECF No. 1 at 6 and 7. This was despite Petitioner's acknowledgment that he was subject to a final order of removal, see id. at 2, which would render his current immigration detention beyond the scope of either of those statutes.

As the Parties' briefing progressed, however, it became clear that Petitioner's detention is governed by 8 U.S.C. § 1231(a), and that the Parties agree on that fact. ECF No. 14 at 2; ECF No. 16 at 3. Accordingly, this Court must apply the framework set forth by the United States Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001), in order to determine whether Petitioner should be released from his current immigration detention.

Petitioner states that he was born in South Vietnam in 1977. ECF No. 16 at 2. At some point, his family fled Vietnam. Id. Petitioner was paroled into the United States from a refugee camp in Thailand in September, 1990. Id. See also ECF No. 16-1 at 2. Petitioner does not provide much additional detail on the history of his immigration status.

Respondents submit a Declaration of an Immigration and Customs Enforcement ("ICE") deportation officer named Garret Titus ("Titus"). The Declaration lacks clarity. Titus avers under penalty of perjury that Petitioner was admitted as a lawful permanent resident on or about September 12, 2006. ECF No. 14-1 at 1-2. This assertion is surprising, as Titus goes on to declare that Petitioner was ordered removed to Vietnam on or about February 24, 2000 – more than six years prior to the date that Titus claims that Petitioner supposedly became a lawful permanent resident. Id. at 1.

The basis for Petitioner's order of removal is not explained on the record.

2

Respondents, through Titus' Declaration, go on to aver that Petitioner was released on supervision after being ordered removed on or about March 28, 2003 – more than three years later. Id. He was briefly detained again in 2011. Id.

Petitioner was detained yet again on September 25, 2025, after unnamed immigration officials "advised that there is a significant likelihood of removal in the reasonably foreseeable future." Id. at 2. The factual basis underlying this statement is not explained in Titus' Declaration, or anywhere else in the record. As of the date of this writing, Petitioner remains detained.

Petitioner was provided an application for travel documents on October 20, 2025.[3] Id. That application was submitted to Vietnam on December 17, 2025. Id. It remains pending. Id.

Petitioner alleges that he is not a citizen of Vietnam, and lacks a valid Vietnamese passport. ECF No. 1 at 2. This issue is not addressed in Respondents' Answer. The lack of a valid passport is implicit by the averments in Titus' Declaration, as set forth above. Titus is silent on the issue of Petitioner's Vietnamese citizenship – an issue that seemingly would be of some import in establishing whether a significant likelihood of Petitioner's removal to that country in the reasonably foreseeable future actually exists.

The instant Petition was filed on January 8, 2026. ECF No. 1. Respondents filed their Answer on February 12, 2026. ECF No. 14. Petitioner submitted a Traverse on March 4, 2026. ECF No. 16.

---

[3] Given that Respondents did not have so much as a completed application for travel documents in their possession at the time that Petitioner was detained on September 25, 2025, it is unclear how or why ICE officials believed that Petitioner's removal was likely in the reasonably foreseeable future at that time.

As is no doubt apparent to the reader, the facts underlying this case are murky. The Parties' deficient briefing does little, if anything, to resolve them. What is clear, however, is the length of Petitioner's current post-removal order detention, along with the fact that Petitioner is unlikely to be removed to Vietnam anytime in the near future.

The Petition is ripe for consideration.

## II.    DISCUSSION

28 U.S.C. § 2241 allows a court to grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States[.]" Id. at § 2241(c)(3). This Court has jurisdiction to hear the merits of the instant case under that statute. Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). See also Roe v. Oddo, No. 25-cv-128J, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) (holding that 8 U.S.C. § 1252(g) did not strip the court of jurisdiction since it was "examining the contest of Petitioner's detention" and not "reviewing Petitioner's removal order.").

8 U.S.C. § 1231(a) states, in pertinent part:

> [(1)(A)] Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

> ***

> [(2)(A)] During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

> ***

> [(6)] An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

4

Once the 90-day removal period of Section 1231(a) has passed, and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute[,]" and the alien must be released. Zadvydas, 533 U.S. at 699. "Indefinite, perhaps permanent, detention" is not authorized. Id. To the contrary, the United States Supreme Court has found that interpreting the statute to allow for indefinite detention would raise "a serious constitutional threat[.]" Id.

Thus, in Zadvydas, the Supreme Court interpreted Section 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." Id. at 689. The Court found that a post-removal order detention period of six months was "presumptively reasonable[;]" however, beyond those six months, if removal no longer is reasonably foreseeable, continued detention becomes unauthorized. Id. at 701.

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. Thus, an alien is not necessarily entitled to release at the conclusion of six months of post-removal order detention. Instead, the Department of Homeland Security may continue detention until no significant likelihood of removal in the reasonably foreseeable future exists. Id. But "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Here, Petitioner has been held for more than six months in post-removal order immigration detention. While Petitioner does not do much in his briefing to advocate for the conclusion that his removal is not likely, other courts have recognized that Vietnam – the country to which Titus averred Petitioner would be removed in the reasonably foreseeable future, see ECF No. 14-1 at 8 – historically has refused to accept for deportation Vietnamese nationals who, like Petitioner, came

to the United States prior to 1995. See, e.g., Lam v. Noem, No. 3:25-CV-00397, 2026 WL 492383, at *2 (W.D. Pa. Feb. 23, 2026). The undersigned takes judicial notice of such cases – and of the reasoning in Lam in particular. Thus, the undersigned is persuaded that Petitioner has met his burden to establish that good reason exists to believe that there is no significant likelihood of removal to Vietnam in the reasonably foreseeable future.

Respondents' briefing does not rebut Petitioner's showing. Titus' Declaration asserts no facts that establish why Petitioner's removal was likely at the time of his detention in September of 2025, or is any more likely today. Indeed, it is clear from the averments in the Declaration that ICE had not yet begun the process of requesting travel documents from Vietnam until well after Petitioner was detained. Moreover, the factual averments in the Declaration are so sparse and equivocal that it is unclear to what extent Titus has actual knowledge of the facts underlying Petitioner's case, and whether he, himself, actually believes that Petitioner's removal to Vietnam is likely to occur in the reasonably foreseeable future.[4] See ECF No. 14-1 at 1-2 and n.2.

To the extent that Respondents assert that one individual was removed to Vietnam in November of 2025, id. at n.3 (misciting Tran v. Oddo as Quoc v. Oddo, No. 3:25-cv-309 (W.D. Pa. 2025), ECF Nos. 12 and 12-1), their argument is unpersuasive. Respondents' bare assertion

---

[4] Given her treatment of Titus' Declaration in her briefing, ECF No. 14 at 2 and n.2, it is unclear whether or to what extent Respondents' counsel examined or investigated the assertions made therein, or whether she, herself, believes that they are accurate.

Respondents' counsel is reminded of the obligations under the Pennsylvania Rules of Professional Conduct. See Pa. R.P.C. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."); see also Pa. R.P.C. 3.3 cmt. 5 ("Paragraph (a)(3) requires that the lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client's wishes. This duty is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence.").

does not explain how the facts of the petitioner in <u>Tran</u> compare with those of Petitioner in the instant matter – if at all. Further, the documents cited from <u>Tran</u> do not establish that that petitioner actually was removed to Vietnam, or to some third country instead. <u>See</u> <u>Tran</u>, ECF No. 12 at 1 (stating that the petitioner had been removed from the United States, but not to where); <u>Tran,</u> ECF No. 12-1, at 2 (stating that the petitioner had been "removed via air on 11/05/25 on flight OY-3763 out of Baltimore, MD verified via UPAX[,]" but not the country to which he was removed.). <u>See also</u>  https://www.flightaware.com/live/flight/OAE3763/history/20251105/1110Z/KBWI/LROP (last visited Apr. 1, 2026) (flight tracking website stating that Flight OAE3763/OY3763 left Baltimore/Washington International Airport on November 5, 2025, and landed in Bucharest, Romania – not Vietnam – on November 6, 2025.).

Respondents have failed to rebut the showing that there is good reason to believe that Petitioner is unlikely to be removed to Vietnam in the reasonably foreseeable future. Whatever remote possibility exists of his future removal to Vietnam is insufficient to justify Petitioner's continued immigration detention. <u>See</u> <u>Escalante v Noem</u>, No. 25-cv-182, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025) (quoting <u>Kane v. Mukasey</u>, No. 08-cv-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), <u>superseded by</u> 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008) (a new report and recommendation was entered denying the petition as moot because petitioner was deported prior to the order adopting the report), <u>adopted</u> by 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008)) ("A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future.").

Petitioner's post-removal order detention has become unreasonable. The Petition, ECF No. 1, will be granted, and Petitioner shall be released from custody, subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3).

**III    CERTIFICATE OF APPEALABILITY**

A certificate of appealability is not required for federal detainees seeking relief under Section 2241. Muza v. Werlinger, 415 F. App'x 355, 357 n.1 (3d Cir. 2011). See also 28 U.S.C. § 2253(c)(1). Therefore, it is not necessary to determine whether one should be issued here.

An appropriate order follows.

BY THE COURT,

Date: April _____, 2026

STEPHANIE L. HAINES
UNITED STATES DISTRICT JUDGE

cc:    The Honorable Maureen P. Kelly
United States Magistrate Judge

All counsel of record via CM-ECF

8